**OGLETHORPE POWER CORPORATION,**
**Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**Georgia Power Company, Intervenor.**

**No. 95–1482.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 9, 1996.

Decided June 4, 1996.

William D. DeGrandis, Washington, DC, argued the cause and filed the briefs, for petitioner.

Joel M. Cockrell, Attorney, Federal Energy Regulatory Commission, argued the cause, for respondent. Jerome M. Feit, Solicitor, Washington, DC, Joseph S. Davie, Deputy Solicitor, and Edward S. Geldermann, Attorney, Bethesda, MO, were on the brief.

Robert H. Forry argued the cause, for intervenor, with whom Benjamin L. Israel, Atlanta, GA, was on the brief.

Before: EDWARDS, Chief Judge, GINSBURG and ROGERS, Circuit Judges.

GINSBURG, Circuit Judge:

Oglethorpe Power Corp. petitions for review of two orders of the Federal Energy Regulatory Commission dismissing Oglethorpe's complaint against Georgia Power Co. See 69 FERC ¶ 61,208 (1994); reh. denied 72 FERC ¶ 61,065 (1995). Oglethorpe claims that (1) Georgia Power violated the filed-rate doctrine when it charged Oglethorpe for certain reserve capacity in contravention of the terms of Georgia Power's tariff, and that (2) in the alternative, if Georgia Power properly charged Oglethorpe for this capacity, then Georgia Power must share with Oglethorpe the settlement it received from a third party that breached its contractual obligation to purchase that same capacity from Georgia Power. We hold that (1) the FERC properly construed the governing tariff to permit Georgia Power to charge Oglethorpe for the additional reserve capacity, but that (2) the agency failed to give a reasoned basis for denying Oglethorpe's alternative claim to a share of the settlement that Georgia Power received in respect of that capacity.

## I. Background

In 1975 Georgia Power filed with the Commission (then the FPC) a tariff for the whole-

saling of power to partial requirements customers in the State of Georgia. This "PR Tariff" governs the rates that Georgia Power may charge such so-called "territorial" customers for four classes of power-generating capacity, as follows.

For each contract year Georgia Power must prepare a Resource Classification List (RCL) of all its territorial capacity resources and adjust the RCL as necessary during the course of the year in order to reflect any increase or decrease in such capacity. Georgia Power must also designate its capacity resources as "base," "intermediate," or "peaking" and determine each customer's requirements in each category according to the terms of the PR Tariff. "All other territorial resources," *i.e.*, those not required by any customer, are designated "reserve resources," for which Georgia Power may impose a monthly charge of $4.40 per kilowatt.

In February 1982 Georgia Power entered into an agreement to sell Gulf States Utilities Co., an off-system customer, a specific quantity of power (capacity and energy) from certain of its generating units over the next ten years. Under Commission policy Georgia Power could have required its partial requirements customers to pay for that capacity, provided that Georgia Power also credited them with the revenues generated by off-system unit power sales. Instead, however, Georgia Power and its territorial customers opted out of this aspect of the regulatory regime pursuant to an agreement that Georgia Power would absorb the costs and retain the revenues associated with such off-system sales. This agreement is memorialized in a 1982 amendment to the PR Tariff and in a written agreement that the parties filed with the FERC, which together constituted the filed rate for Georgia Power's sales to Oglethorpe when Gulf States defaulted on its obligation to pay Georgia Power in 1986.

In 1988 Gulf States, which was approximately $350 million behind in payments to Georgia Power and its affiliates, reaffirmed its previously stated intention not to make further payments because unforeseeable events had reduced its capacity requirements. In August of that year the FERC, at Georgia Power's request, permitted Georgia

Power to suspend service to Gulf States without waiving its "legal rights, remedies and claims for damages available against Gulf States"; in the FERC's view, that is, the suspension of service did not terminate the contract. *Southern Company Services, Inc.,* 44 FERC ¶ 61,290 (1988).

Georgia Power then "recalled", added to the RCL, and for the remainder of the contract period (1988–92) charged its territorial partial-requirements customers for, the capacity it had previously dedicated to serving Gulf States. Meanwhile, in 1991 Gulf States paid Georgia Power approximately $95 million to settle its breach of contract claim; the FERC approved the settlement and terminated the contract between Georgia Power and Gulf States. Although Oglethorpe had by then paid Georgia Power $12 million in respect of capacity that Gulf States had been obligated to purchase between 1988 and 1992, Georgia Power refused to credit any portion of the settlement proceeds to Oglethorpe or its other territorial customers. Oglethorpe complained to the Commission, which upheld Georgia Power's position, and then petitioned this court for review of the agency's decision.

## II. Analysis

■ Oglethorpe presses two claims here. First, the petitioner maintains that Georgia Power violated the filed-rate doctrine when it charged Oglethorpe for the capacity it had reallocated from Gulf States to the RCL; the gravamen of this claim is that the reallocation contravened the terms of the PR Tariff and the 1982 agreement between Georgia Power and its partial-requirements customers. On this issue we affirm the Commission substantially for the reasons stated in its orders. There is no need to burden the Federal Reporter by rehearsing the agency's opinion here.

■ Second, Oglethorpe maintains that if Georgia Power did properly charge it for the capacity re-allocated from Gulf States to the RCL, then Georgia Power must share with Oglethorpe the money it received from Gulf States in settlement of Georgia Power's contract claim relative to that capacity. The Commission did not dispute Oglethorpe's

premise that, once Georgia Power started charging its territorial partial-requirements customers for the re-allocated capacity, it was obligated to share with those customers any revenues received in connection with an off-system sale of that capacity. Nonetheless, the Commission gave no fewer than three grounds for rejecting Oglethorpe's claim. Oglethorpe argues that none of the FERC's points provides a reasoned basis for denying Oglethorpe's claim to a share of the settlement. We agree.

First, the FERC regarded the Georgia Power–Gulf States settlement as providing compensation only for damages that Georgia Power incurred prior to August 1988; because the settlement was for an amount less than Gulf States owed Georgia Power for the power it had received through that date, the FERC concluded that Georgia Power received nothing in the settlement with respect to the capacity that it re-allocated to Oglethorpe (via the RCL) for the period from August 1988 to 1992. We see no rational basis for characterizing the settlement in this way.

Gulf States contracted to purchase from Georgia Power specified quantities of power each year from 1982 through 1992 but stopped making the contractually required payments in June 1986. Georgia Power therefore had a contract claim against Gulf States not only for the damages it incurred through August 1988 but also for the value of its expectancy with respect to the power it would have delivered during the remaining term of the contract, *i.e.,* through 1992. Georgia Power compromised both aspects of its claim for $95 million. The FERC had no valid basis for treating the settlement as though the entire amount was paid to settle the claim for the early years and none was paid to settle the claim for the later years. That the settlement was for less than Gulf States owed for power when the FERC suspended Georgia Power's duty to perform is immaterial in the absence of any reason either to doubt the sufficiency of Georgia Power's claim to damages beyond that time or otherwise to attribute the entire settlement to one aspect of Georgia Power's claim.

As an alternative reason for rejecting Oglethorpe's claim to a share of the settlement proceeds, the FERC stated that

> even if the Gulf States contract never had been suspended, the unit sale nevertheless was scheduled to end in 1992, prior to the filing of Oglethorpe's complaint. Assuming, *arguendo*, that Oglethorpe's arguments for refunds were otherwise persuasive, we lack the authority to order retroactive refunds in these circumstances.

69 FERC ¶ 61,208 at 61,826/2. In its brief before this court the FERC further explains that permitting Oglethorpe to recover a share of the settlement would constitute retroactive ratemaking because Georgia Power received the settlement "to cover a particular period of time, prior to July 1988, during which [the PR Tariff] specifically barred Oglethorpe from sharing in any revenues received by Georgia Power attributable to its [off-system unit power] sales."

As should be apparent, this purportedly alternative reason for rejecting Oglethorpe's claim to a share of the settlement proceeds likewise depends upon treating the entire settlement as compensation for damages that Georgia Power suffered before it re-allocated capacity from Gulf States to its territorial customers. Because the FERC's first argument fails, so must this one.

Finally, in its order denying rehearing, the FERC offered yet another reason for rejecting Oglethorpe's claim: Oglethorpe had, in effect, already benefitted from the settlement because, to the extent that Georgia Power might have been required to pass the proceeds of the settlement along to its territorial customers, Georgia Power could in turn have raised its rates to recoup that amount from them; when the transactions were complete, the incidence of the burden associated with the unused capacity would be unchanged. 72 FERC ¶ 61,065 at 61,320–21. In its brief to the court the FERC does not defend this aspect of its decision but Georgia Power, as Intervenor, persists in trying.

Georgia Power points out that although it charged Oglethorpe for additional reserve capacity at the tariffed rate, it did not raise any of the tariffed rates to reflect the full costs

associated with that capacity. Had it done so, claims the Intervenor, it would have been entitled either to keep the settlement proceeds and reduce by that amount the costs it passed along to the partial requirements customers, or to pass along both the settlement proceeds and the full costs. The parry to this thrust, as the FERC effectively concedes, is that Georgia Power could have obtained such a rate increase only if it had prevailed in a proceeding under § 205 of the Federal Power Act, 16 U.S.C. § 824d. In that proceeding Georgia Power would have had to show that the unused capacity could be properly charged to Oglethorpe as a "used and useful" addition to Georgia Power's territorial rate base. *Town of Norwood v. FERC,* 80 F.3d 526, 531 (D.C.Cir.1996). Georgia Power might or might not have been able to make that showing; the quoted phrase is a term of art and its application to the capacity here in dispute cannot be assumed. In any event, Oglethorpe would have had an opportunity to oppose the putative rate increase—and Georgia Power would have had the burden of persuasion—in a § 205 proceeding. 16 U.S.C. 824d(e) ("At any hearing involving a rate or charge sought to be increased, the burden of proof to show that the increased rate is just and reasonable shall be upon the public utility"). The Intervenor's argument is, therefore, entirely too speculative to carry the day in this very different procedural context.

### III. Conclusion

For the reasons set out above, we affirm the FERC's orders with respect to the $12 million that Georgia Power charged Oglethorpe in connection with capacity re-allocated from Gulf States to the RCL, and vacate the orders insofar as they deny Oglethorpe's claim for a share of the settlement that Georgia Power received from Gulf States. Accordingly, we remand the case so that the FERC may determine the share of such proceeds to which Oglethorpe is entitled.

*So ordered.*